IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARK DAVIS CONNER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil Action No. 7:14-CV-274 |

## MEMORANDUM OPINION[1]

Plaintiff Mark Davis Conner ("Conner") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Conner alleges that the ALJ erred by failing to give the opinions of his treating and examining physicians appropriate weight and that additional evidence submitted after the ALJ's decision warrants remand for consideration by the Commissioner. I conclude that substantial evidence supports the Commissioner's decision on all grounds and that the additional evidence is not new or material and thus does not warrant remand for consideration. Accordingly, I hereby **DENY** Conner's Motion for Summary Judgment (Dkt. No. 15), and **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 17.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Conner failed to demonstrate that he was disabled

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

1

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Conner filed for SSI and DIB on May 12, 2011, claiming that his disability began on April 18, 2011. R. 94, 215–16. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 119–23, 129–32. On May 2, 2013, ALJ Steven A. De Monbreum held a video hearing to consider Conner's disability claim. R. 32–69. Conner was represented by an attorney at the hearing, which included testimony from vocational expert Mark Heilman. Id.

On May 24, 2013, the ALJ entered his decision analyzing Conner's claim under the familiar five-step process,[3] and denying Conner's claim for disability. R. 17–27. The ALJ found

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

that Conner suffered from the severe impairments of visual impairment-bilateral hypertropia/strabismus, status post eye surgeries, and a right lower extremity limp from a motor vehicle accident at age nine. R. 20. The ALJ further found that Conner retained the RFC to perform a range of light work, and can lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally; sit, stand and walk for 6 hours in an 8-hour workday; occasionally push or pull with foot controls; frequently climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel, crouch and crawl; and never have concentrated exposure to vibration. R. 23. The ALJ determined that Conner's visual impairments require that he avoid hazards such as dangerous moving machinery and unprotected heights. R. 23. The ALJ determined that Conner could return to his past relevant work as a fast food worker, and thus, that Conner was not disabled. R. 25–27.

Conner submitted additional evidence to the Appeals Council, which the Appeals Council accepted into the record. On April 2, 2014 the Appeals Council denied Conner's request for review, and the ALJ's decision became the Commissioner's final decision. R. 1–5. This appeal followed.

## ANALYSIS

Conner argues that the ALJ failed to properly consider the opinions of his treating and examining physicians, and that additional evidence submitted to the Appeals Council warrants remand under 42 U.S.C. § 405(g).

### Treating and Examining Physicians

Conner argues that the ALJ erred by giving little weight to the opinions of his treating and examining physicians, and instead giving great weight to the opinions of the state agency reviewing physicians. Having reviewed the record, I find that substantial evidence supports the

3

Case 7:14-cv-00274-RSB   Document 19   Filed 09/25/15   Page 3 of 12   Pageid#: 589

weight given to the various medical opinions by the ALJ and his conclusion that Conner is not disabled.

Conner was in a car accident at age nine, which resulted in a right lower extremity limp. R. 386. Following the accident, Conner began to experience diplopia, or double vision. R. 356. Conner was 52 on the date of the administrative hearing, had completed the twelfth grade, and previously worked for the Montgomery County Department of Sanitation, answering phones, using the computer, and making reports. R. 38–39. Conner worked full time until April 2011, when he transitioned to part-time work in the same position. R. 39–41.

In 2005, Conner underwent eye surgery by Edwin Wortham, M.D., including a bilateral lateral rectus recession, three MM and right superior oblique posterior seven-eighths tenectomy. R. 364–65. In 2010, Dr. Wortham performed a right superior rectus recession 8 MM procedure. R. 370. Thereafter, Conner continued to complain of vision changes and double vision.

The record contains multiple opinions with regard to the functional limitations imposed by Conner's eye impairments and right lower extremity limp. On April 14, 2011, Dr. Wortham wrote a letter "To Whom It May Concern," stating that Conner has been his patient since 2005 for persistent diplopia secondary to exotropia and a superior oblique anomaly, and "[c]urrently he has persistent intermittent diplopia which precludes his normal functioning at work." R. 372.

On October 4, 2011, state agency psychologist Louis Perrot, Ph.D., reviewed Conner's records and determined that he does not suffer from any severe mental impairments. R. 100. That same day, state agency physician Robert McGuffin, M.D., reviewed Conner's records and determined that he was capable of performing a range of light work. R. 100–102. Specifically, Dr. McGuffin determined that Conner was capable of lifting and carrying 20 pounds frequently and 10 pounds occasionally; sitting, standing and walking 6 hours in an 8-hour workday;

4

occasionally pushing and pulling with right lower extremity; never climbing ladders, ropes or scaffolds, occasionally stooping, kneeling, crouching, and crawling, and should avoid concentrated exposure to vibration and hazards. Id.

Conner underwent a consultative examination with David Boone, D.O. on September 11, 2011. R. 383–87. Conner reported having double vision his whole life, and a right lower extremity limp after a motor vehicle accident. Conner stated that he lives with his wife, can drive around town, cuts grass with a riding mower, shower and bathe independently, cook and prepare meals, and help out with chores around the house. R. 384. Despite his limp, Conner was able to walk to the examination room in a straight line without falling off balance or using an assistive device. R. 385. Conner's physical examination was normal, aside from evidence of the limp in his right leg and some decreased range of motion in his right hip. R. 386. Dr. Boone noted "[d]ouble vision, appears well compensated as I could not find any objective evidence that he had difficulties with his vision today." Id. Dr. Boone determined that Conner was capable of standing and walking for 2 hours in an 8 hour day, sitting for 6 hours in an 8 hour day, lifting and carrying 10 pounds occasionally and less than 10 pounds frequently, and limited ability to squat, crouch or crawl frequently. R. 386–87.

On February 1, 2012, state agency physician J. Astruc, M.D., reviewed Conner's records and agreed with Dr. McGuffin's findings that Conner could perform a range of light work. R. 114–16.

On May 7, 2012, Conner visited Daniel Kelly, M.D., complaining of his right foot getting stuck when he steps and loss of right hand strength. R. 399. Dr. Kelly noted decreased strength

5

in Conner's right leg and right grip. R. 401.[4] Dr. Kelly's assessment was "[a]gree w/ disability." R. 402.

On April 17, 2013, Dr. Wortham completed a Vision Impairment Residual Functional Capacity Questionnaire. R. 495. Dr. Wortham diagnosed Conner with hypertropia and diplopia, with a prognosis of "stable, moderate chance progression." R. 495. Dr. Wortham found that Conner's visual acuity after best correction in his right eye is 20/25 and left eye is 20/20. Id. Dr. Wortham noted that new constant diplopia affects Conner's daily activities, and that he can never perform work activities that require depth perception, and rarely perform work activities with near acuity or far acuity. R. 495–96. Dr. Wortham found that Conner cannot avoid ordinary hazards in the workplace, has difficulty walking up and down stairs, and cannot work with small objects. He also stated that Conner's symptoms will interfere with his attention and concentration constantly. R. 497.

When developing Conner's RFC, the ALJ considered the record as a whole, including the opinions set forth above. The ALJ gave little weight to the opinions of Drs. Wortham and Kelly that Conner's limitations prevent all work. R. 24–25. The ALJ also found no objective basis for Dr. Boone's conclusion that Conner is limited to standing for 2 hours in an 8 hour workday and limited to lifting and carrying 10 pounds. The ALJ instead relied upon the opinions of Drs. McGuffin and Astruc that Conner is capable of performing a limited range of light work.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not

---

[4] Dr. Kelly's review of Conner's symptoms states "[n]egative for blurred vision and double vision." R. 401. This statement was later corrected by Dr. Kelly's office at Conner's request, to reflect that he suffers from diplopia. R. 492.

6

affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 WL 6621693 (E.D. Va. Dec. 29, 2010).

Here, substantial evidence supports the ALJ's decision not to give the opinions of Drs. Wortham and Kelly controlling weight. With respect to Dr. Kelly, considering his notation "agree with disability," to be a treating physician opinion is generous. Dr. Kelly included this statement in his only treatment note in the record before the ALJ, with no additional function-by-function assessment or explanation. Dr. Kelly noted that Conner "[h]as applied for disability but [was] turned down." Dr. Kelly's objective examination of Conner was normal, aside from decreased strength in his right leg and right grip. R. 401. There is no objective support in Dr. Kelly's treatment note for his decision to "agree with disability." Thus, there is sufficient evidence to support the ALJ's decision to give Dr. Kelly's conclusory "opinion" regarding disability little weight.

Unlike Dr. Kelly, Dr. Wortham had a long-term treating relationship with Conner, and completed multiple assessments of Conner's functional limitations as a result of his visual impairments. However, the restrictions suggested by Dr. Wortham in his April 2013 opinion are contrary to the findings of the consultative and reviewing physicians and even exceed Conner's

7

reported limitations. Specifically, when Dr. Boone examined Conner, he found that Conner compensated for his double vision such that there was no objective evidence of visual difficulties. R. 386. This is a stark contrast to Dr. Wortham's conclusion that Conner's visual impairments prevent him from performing any gainful activity.

Additionally, Conner reported being capable of caring for his children, helping around the house, mowing the lawn on a riding mower, cooking, driving locally, and attending church. R. 342–49. As the ALJ noted, many of Conner's reported daily activities, such as reading the Bible, driving, cooking and fishing require significant vision. R. 24. The ALJ incorporated limitations in the RFC to address Dr. Wortham's concerns, including a restriction to avoid hazards such as dangerous moving machinery and unprotected heights. R. 23. Thus, evidence supports the ALJ's decision to give little weight to Dr. Wortham's opinion that Conner's visual limitations prevent him from performing any work.

With regard to Conner's physical limitations, substantial evidence supports the ALJ's conclusion that Conner is capable of standing and walking for 6 hours in an 8 hour workday and lifting 20 pounds occasionally and 10 pounds frequently. Despite Conner's limp, the record reflects that he does not use an assistive device to ambulate, he has normal strength in both legs, and he can walk in a straight line without falling. R. 385–86. Dr. Boone noted during his examination that Conner's limp was chronic and well compensated. R. 386. Thus, evidence supports the ALJ's decision to give little weight to Dr. Boone's conclusion that Conner can only walk and stand for 2 hours in an 8 hour workday, and instead adopt the opinions of Drs. Astruc and McGuffin that Conner is capable of standing and walking for 6 hours in an 8 hour workday.

Likewise, the substantial evidence supports the ALJ's decision to adopt the opinions of Drs. McGuffin and Astruc that Conner is capable of lifting up to 20 pounds occasionally and 10

pounds frequently. Dr. Boone recommended that Conner lift up to10 pounds frequently; however, his examination of Conner found full strength in his upper extremities, including bilateral hand grip, full range of motion in his upper extremities and no described loss of sensation. R. 386. Accordingly, substantial evidence exists to support the ALJ's determination that Conner is capable of performing a limited range of light work.

### **Additional Evidence**

Conner also contends that his claim should be remanded for further administrative consideration based upon additional evidence submitted to the Appeals Council. Conner provided additional evidence dated between July 10, 2013 and August 29, 2013. R. 70–93. The Appeals Council accepted the additional evidence and considered it with the rest of the record, but "found that this information does not provide a basis for changing the Administrative Law Judge's decision." R. 1–2. I agree that this evidence does not warrant remand.

On July 7, 2013, David Stoeckle, M.D., wrote a letter "To Whom it May Concern," stating that as a result of several abdominal incisional hernias and inguinal hernias, Conner should not lift more than fifteen pounds. R. 93. A few days later, Dr. Wortham completed a physical residual functional capacity questionnaire, stating his opinion that Conner's diplopia precludes normal work and that his pain will constantly interfere with his attention and concentration. R. 87–91. On July 23, 2013, John Facciani, M.D. with Vistar Eye Center completed a physical residual functional questionnaire and echoed Dr. Wortham's conclusion that Conner's diplopia would constantly interfere with his attention and concentration and prevents him from normal work "unless one eye occluded." R. 81–85.

Conner visited Dr. Kelly on July 24, 2013, to talk about filing for disability. R. 77. Conner noted that he was having more problems with right sided weakness and falling. Id. Dr.

9

Kelly's physical examination of Conner was normal aside from blurred vision and double vision. R. 79. Dr. Kelly wrote, "I do feel that p[atien]t is disabled & unable to work." R. 80.

On August 16, 2013, Dr. Facciani completed a second residual functional capacity questionnaire, restating his opinion that Conner suffers from constant double vision and must occlude one eye to eliminate his double vision. R. 74–75. He found that Conner can never perform activities that require depth perception. R. 75. On August 19, 2013, Dr. Wortham completed a third residual functional capacity questionnaire, again stating his opinion that Conner's diplopia precludes his ability to do work. R. 71–73.

When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. The Appeals Council does not require good cause to admit previously existing records. Id. Upon the Appeals Council's denial of Conner's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Wilkins, 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would

change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If such conflicts are not present, the case can be decided on the existing record without a remand. Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Ridings v. Apfel, 76 F.Supp.2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 F. App'x 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001) (unpublished opinion); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013)).

Here, the additional medical records provide no basis to remand this case because they are duplicative of evidence that was already in the record before the ALJ. The records do not add any new information, and there is no reasonable possibility that consideration of these records would change the outcome of the decision. Specifically, the additional evidence submitted from Drs. Wortham and Kelly simply restates the same conclusions and opinions that they previously provided and were considered by the ALJ. The reports from Drs. Facciani and Stoeckle are also cumulative of opinions that were previously in the record before the ALJ. Accordingly, there is no basis upon which to remand this case under 42 U.S.C. § 405(g).

11

Case 7:14-cv-00274-RSB   Document 19   Filed 09/25/15   Page 11 of 12   Pageid#: 597

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is **GRANTED** and Conner's motion for summary judgment is **DENIED**.

Enter: September 25, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge